24-2978, and I understand we have Attorney Baumgartner. Yes, good morning, Your Honor. And you would like to reserve two minutes for rebuttal, right? Yes, thank you. I also want to thank you. We got your letter with the update on the state case. So just to clarify, you're, I understand, withdrawing the argument with respect to consecutive versus concurrent sentences? That's correct. Okay, so please proceed. Thank you, Your Honor. I understand that. Thank you, Your Honor. May it please the Court, Sarah Baumgartel of the Federal Defenders, on behalf of Deshaun Gregory. In sentencing Mr. Gregory for low-level violations of his supervised release, the district court erred by penalizing him for the mere fact that he had been arrested and relying on unsubstantiated allegations that were made in connection with those arrests, primarily the claim that Mr. Gregory had engaged in altercations with the police and with others. Those were not admissions that he made as part of his plea. They were not substantiated by any state court proceeding and the government did not prove them. They should not have been relied upon by the court at sentencing. In addition, the court improperly relied on punitive and retributive factors in imposing an over-year sentence in prison for an individual whose violations were fundamentally a product of his severe mental illness. Can I ask you about that question first? My understanding is, and you acknowledge this, that our court's case law, provided the district court may consider those factors, correct? You know, I believe the court's case law is a little more nuanced than that. The So to the extent that it is precluded, we're raising it for purposes of preservation. That I understood. But Do you think that we as a panel have leeway to say that that is, as a statutory matter, forbidden? Your Honor, the court did say that in United States v. Burden, which is a post-United States v. Williams case and post-Tapia. So in Burden, this court said that in imposing a term of supervised release, a district court was prohibited from considering retributive factors. So you're saying one panel overruled another panel? Well, that wouldn't have been. So that's why I'm saying it's more nuanced. So the Williams court in United States v. Williams, which was this 2006 decision, talked about how it's necessary to consider the seriousness of the offense, the seriousness of the violation in considering the permissible factors. I guess, but it's sort of, and I appreciate your flaggingness in the nuances of our case law, but I thought it was particularly telling that the district court said quite clearly, I find this sentence is sufficient but not greater than necessary to satisfy the sentencing purposes set forth in 3553A to B through D, and therefore seem to quite explicitly exclude consideration of subsection A, which would be the retributive factors. So I guess my question is, if she said that out loud, quite expressly, why would we not take the court at its word that it was not in fact considering retribution? The court also said it was considering the factors in 3565A, which includes all of the 3553A factors. Yeah, but then we got very specific. I mean, these are factors in 3553A. But then when she got more precise, she said A to B through D. She also explicitly said she was considering promoting respect for the law. Okay. And so if, I think what the record shows is that there was not a clear division in the district court's mind between the factors that were permitted versus prohibited under our argument. And that was in line with the government's argument to the court. The government argued to the court that under this court's law, she was permitted to consider those factors. And so when you combine the government's advocacy of considering the factors, the indication in the case law that you can consider the factors, and certain statements the court made, I think it's sufficient to show that there was consideration. There's — Okay. I'd like to come back to your statement about considering the address, the arrest record, the State arrest record. Now, that's a little complicated, because I believe that the Third and the Fifth Circuits have said that that's error. We have not. And so my question is that is it plain error? Because it was not objected to. You know, sure, I think it's an argument, and maybe we should come out that way, but how can we say when we have not decided that the error is plain? So if you consider this Court's precedential cases in United States v. Juwa and United States, I think that is sufficient to show that this was a plain error. It was a consideration not only of the fact that he had been arrested, but also the allegations of, quote, altercations underlying those arrests. And so this Court made clear in both Juwa and Aldean that when there are unsubstantiated allegations, even if they are — But as to the unsubstantiated allegations, I found it harder to find in the district court's discussion that they — the court discussed them except as to the supervised release, which is not being appealed. That is, if you look at what the court said, they did some — mentioned them. They mentioned what was unsubstantiated only, barely, with respect to supervised release, and as to the actual arrests, and that they considered. But that's not something that we have spoken to, have we? So, sir, let me — two responses. The heart of the district court's sentencing pronouncement is at 79 through 81 of the appendix. And on A81, the court talks about, in justifying the 14-month prison term, that Mr. Deschamps needs to start making good choices to put yourself in a situation where you're not going to keep getting arrested, getting into altercations with the police and others. So he did get arrested. That's 100 percent true and undisputed, right? Yes. So that's not a problem, the judge saying that. But is it just the getting into an altercation, that's the language that's problematic, that maybe he didn't get in? Because the thing about an altercation is it doesn't ascribe blame to him, right? It could have been the police's fault. Who knows? Whereas the allegation, more specifically, like, oh, he threw a bottle at the police, that might be a more specific allegation of wrongdoing on his part. But — The sentence is you need to start making good choices. Well, that's — So you're not going to keep — I mean, he admitted violating supervisory release. He wasn't calling probation. He was getting arrested. All of these things were happening. The only reason he got sent to jail is he was making bad choices. So the full sentence is — So then — The full sentence is you need to start making good choices to keep from getting arrested. So it's clear that the court is attributing blame to him for getting arrested and attributing blame to him for getting into altercations with the police. Well, okay. But that's what I mean. It seems to me the only thing that you can hang your hat on is this last bit about the altercations, because it is undisputed he was getting arrested. Your Honor, I submit — If only one makes better choices, one doesn't get arrested. That seems like not much of a leap, no? That is a leap, Your Honor. When an individual —  Well, Your Honor, as we talk about in our opening brief, the fact of arrest is often controlled by circumstances outside an individual's control, including their race, socioeconomic status, and housing status. And so when you penalize an individual for the mere fact of being arrested and attribute blame to them on that basis, you are implicitly — Well, but this is all coming — I mean, you aren't seriously suggesting that his experience on supervised release was less than satisfactory? He violated supervised release. That's true. Numerous times. Your Honor, yes. So why wasn't — you don't dispute that she was well within her discretion to impose some term of incarceration? Well, our argument is that there was — I may not have done it. You may not have done it, but obviously that's not the point. The argument is that there was no legitimate basis for the 14-month term of imprisonment. And so to the extent that you might say, for example, you can imagine legitimate reasons for imposing imprisonment that are consistent with an ultimate rehabilitative goal, like stabilizing an individual, protection of the public. In this situation, he had already stabilized before she had incarcerated him, and then she imposed an additional year in prison. And so our claim is that there's no legitimate reason under the rehabilitative purposes of supervised release. Okay. I think we have your argument. You've reserved a couple of minutes. We'll hear back from you.  Thank you. Why don't we hear from the government? Good morning, Your Honors. May it please the Court, my name is Dominic Gentile. I represent the United States in this appeal, and I represented the United States in the court below. This Court should affirm the district court's well-reasoned sentence for the defendant's admitted violations of his supervised release. The sentence the district court imposed was both procedurally and substantively reasonable. And Judge Viscoso committed no error, plain or otherwise, in imposing a within-guideline sentence of 14 months. As Your Honors have inquired of my adversary, the record is quite clear with respect to what the district court relied on. I don't think it's that clear. You know, I do think there is an argument that it relied on things which the Third and the Fifth Circuit have said are improper. So don't overstate your case. I mean, if you put it on plain error, I'm comfortable because it's one of those situations where if the counsel had pointed out the problem with some of those, the district court would have corrected itself. So it's exactly the kind of sandbagging situation we worry about with respect to plain error. But it just doesn't make any sense to me to say that what she said would not have been real trouble in the Third and the Fifth Circuit. Well, Your Honor, what I would submit to the Court is that Judge Viscoso mentioned these arrests solely in the context of describing them as part of the defendant's history of violating the conditions of his supervised release. And to be clear, Judge, one of the specifications of this case is that the defendant he had done something wrong to cause the arrest, right? Well, that's to my point, Judge Parker. One of the specifications to which the defendant pled guilty was a requirement or a condition of his supervised release which required him to report any contacts with law enforcement, specifically arrests, which he failed to do. But I think that goes to the same point, right, the idea that maybe it wasn't his fault. I mean, there can be instances where you're arrested and it's a case of mistaken identity or maybe the police's fault or something like that. She could have easily made a factual finding and it wouldn't have necessitated live testimony from the police officers. I mean, you could have done it based on police reports or something else. And she could have said, well, I've looked at the facts and I found that there was an altercation here. But she didn't make that factual finding, right? It wasn't contested. And so, I mean, it seems there is an argument on the defense side that had she wanted to take that into consideration, she could have, but it would have required an extra step of factual finding on her. It would have, Your Honor. It would have required the government to prove by preponderance the evidence that the conduct underlying that arrest was actually Which is a rather slim burden, really, in this context because the Federal Rules of Evidence don't apply and all that, right? That's correct, Judge. But the district court did not rely on that arrest in imposing her sentence. She emphasized the importance of future compliance with the law, as Your Honor was inquiring earlier. Simply put, the reference to the prior arrest was part of the district court's broader review of the unobjected to portions of the violation report. Can I just suggest that one of the difficulties of a case like this is the case comes to us with some ambiguities in the record, some ambiguities, arguable ambiguities on the part of statements of the district court that I think probably could have helpfully been clarified. And I guess one of the things I'll point to in particular is the issue that the defense is now withdrawn in light of the conditional discharge of the defendant. You know, it probably would have been cleaner and easier, for example, to ask the district court to state expressly on the record, if there is a future sentence by a state court, will it run consecutively, will it run concurrently, or are you deferring to the decision of the subsequent state judgment? We will concede that point. I know it's a matter of, you know, keeping track of a lot of things, but obviously it can save a lot of work in the long term that, you know, asking, pestering the district judge for three, four, five clarifications can just avoid an appeal completely. We concede the point on that last, on whether the sentence should have run consecutively. And I understand they've withdrawn the argument. But to my previous point, Judge, one of the conditions was that he report this arrest to probation. That's what he violated and that's what he pled guilty to. It would have made no sense if Judge Viscosal had not mentioned the fact that he had been arrested and she wasn't most concerned with the facts underlying that arrest or the facts underlying the specific, you know, the arrest that underlied the specification that was ultimately dismissed. It's clear from a totality of the record itself that she was mostly concerned with, one, the danger the defendant posed to the community, the ability to adequately deter him. What exactly did he do that reflected this danger you mentioned? I'm sorry, I didn't get the last part, Judge. What exactly did he do in terms of violating supervised release that reflected this danger you just mentioned? It wasn't so much what he did to violate his supervised release. It was the nature of his criminal history, which is quite extensive. And the judge was appropriately concerned about that, and she's certainly permitted to take that into consideration. He'd already been sentenced for that. He had already. Judge Pauly sentenced him for that. That's correct, Judge. So what did he do while he was on supervised release that evidenced the danger you referred it to? Well, the defendant failed to report multiple arrests, state arrests, to probation. He failed multiple drug tests, drug screening tests. He failed to report to probation, period, on a number of occasions throughout his supervised release. Well, that makes him irresponsible in my view, but I'm not sure. How does all that make him dangerous? Well, he was also bailed when he was presented before the magistrate's court. I'm sorry? He was bailed when he was presented before the magistrate's court. While out on bail for the violation of supervised release, he went missing, and probation was unable to track him. So given his extensive criminal history for multiple convictions for firearms possession, the court considered him a danger. And it was not just the firearms possession convictions. He has a lifetime order of protection against him from multiple women. Okay, so you're saying that the judge, in fashioning this 14-month sentence on supervised release, took into consideration conduct that he was involved in prior to Judge Pauly's sentencing? Judge Viscoso took into consideration his criminal history, which he is permitted to do, as this court has held a number of times. Yes. Look, I look at the whole thing and think, okay, it's probably okay. But I wish you would be more forthcoming on how really sloppy things were done below, and that maybe on a variety of issues, if there had been more clarification as to what exactly the court was relying on, we might not even have gotten an appeal, or the appeal would be easier. And it just seems to me that it is part of the job of the U.S. attorneys to help judges who are too busy. Fair enough, Your Honor. But what I would point out for the Court here is what the defendant has done in oral arguments and in the briefs, is isolate and string together certain snippets from the sentencing transcript, divorced from the broader context of the overall, the Court's reasoning. And respectfully, this approach is legally flawed, and it misrepresents. Well, the transcript was available to us. And, you know, since we try to read all the materials that are relevant, I don't think we were really misled by anything. At least I wasn't. Well, what I was trying to point out, Judge, is to reduce Judge Viscoso's remarks to a handful of lines plucked from the transcript. Well, some of them are not pertinent. You're saying that there were other relevant remarks that weren't included? Exactly, Judge. And I think Judge Nardini pointed to some of them where the judge twice specifically referenced 3553A1. Well, there's a very good response to that, and it's called a writ brief. Yes, Your Honor. We understand. Okay. I think we have your argument. Thank you very much. Thank you. Why don't we hear from counsel to the appellant. If you have anything you'd like to add, we have two minutes for you. Your Honor, I understand the uphill battle I'm fighting here trying to invalidate a within-guidelines sentence. But I just want to make a few points, is just a factual correction. During the month that Mr. Gregory was on bail, the government said that he went missing. He did not go missing. He was on a GPS tracker. He was late getting home twice, and there was one day when he left without permission. But he wasn't missing. And, in fact, he made incredible progress given his individual characteristics during that month. He secured an apartment after being homeless for months. He regulated his medications and got on a long-term psychiatric medication that worked better for him. He secured an internship. And he was, in fact, in very regular and frequent contact with the probation department. So he had been doing well. Part of the reason that Judge Viscoso remanded him was that he was approximately 30 minutes late for the court appearance. And, obviously, no one should be late for court, but that was the tenor of the proceedings. Can I just ask, you may or may not have this at the ready, but when is his anticipated release date? It's in July. In July of this year. Okay. And so just to Your Honor's point about sandbagging, there's not a real advantage to not raising this at the sentencing because the reality is he's going to serve the bulk of his sentence before he has the opportunity to take an appeal. Certainly it's on plain error because this was an oversight and it should have been objected to, but I submit that there's no strategic benefit here because he's going to serve the majority of his sentence no matter what. And I just want to emphasize that the extent to which the judge emphasized his prior criminal history, I think, is indicative of the retributive nature of the sentencing here. This was not a sentence that was looking forward, trying to see how Mr. Gregory could be better rehabilitated. It was a sentence that was looking backward to punish him for things that he had done in the past, and that is not a legitimate aim of supervised release. Thank you. Thank you very much to both of you. Thank you very much. Appreciate it. We will take the case under advice. Helpful arguments.